849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,
v.
Curtis D. ABLES and Joyce Ann Ables, Defendants-Appellees.
 No. 87-5553.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and JULIAN A. COOK*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 The principal issue before us in this declaratory action on an insurance policy is whether or not the district court was in error in directing a verdict on a fraudulent concealment claim for the defendant insureds at the conclusion of Aetna's case. We must also determine whether Kentucky's insurance code requires prejudgment interest when the insurer declines to pay insurance proceeds pending resolution of a legitimate coverage question.
 
 
 2
 This case involves a dispute over an insurance contract issued by Aetna to Mr. and Mrs. Ables to cover the risk of a home fire loss. There is no dispute that the policy between the parties was in effect at the time of the fire in controversy. The question is whether Aetna may avoid liability. On February 22, 1983 the Ables' home caught fire and was destroyed. Aetna sent an inspector to the site and he concluded the fire was caused by arson. Aetna nevertheless forwarded the insureds a total of $12,000 to cover living and other expenses while it considered whether or not to honor the claim.
 
 
 3
 As part of the claim process, the insureds filed a number of sworn statements concerning the fire. These statements indicated that defendants did not start the fire, and that the insured property was unencumbered except by liens listed. In fact, there were encumberances totalling over $20,000 not listed in these statements filed by defendants with Aetna.
 
 
 4
 Aetna refused to pay the claimed loss because it believed the Ables intentionally set the fire and also because it was convinced they fraudulently concealed the liens not listed on their proof of claim statements. This last action was alleged to be a violation of the contract's terms, specifically the following clause found on page twelve of the contract:
 
 
 5
 Concealment or Fraud. We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.
 
 
 6
 Aetna's declaratory judgment action, grounded in diversity, sought a declaration that it was not liable because of arson, and because of the false statements. Only the arson issue was ultimately sent to the jury because the district judge directed a verdict for defendants on the fraudulent concealment claim. The judge found this not to be a triable issue because Aetna did not show how it was harmed by the false statements, an element it found to be necessary under Kentucky law.
 
 
 7
 The jury found for the defendant and decided arson did not cause the blaze. They apparently believed the testimony of Fire Department Captain Eades, who was at the scene of the fire and who declared it was not the result of arson because of tests he performed at the site. He stated the home burned quickly for a variety of reasons, including the fact that firemen had broken out windows, allowing more oxygen to get in. The jury may also have been persuaded by the fact that the insureds wanted their home rebuilt instead of cash, an action tending to dispel a motive to commit arson. The jury awarded damages of $142,900 (less the amount already paid by Aetna), and this net amount was reduced to judgment by the district court. Prejudgment interest was set at 8 percent to run from June 3, 1987. This appeal followed.
 
 
 8
 Aetna's principal contention is that the district court improperly directed a verdict against it on the fraudulent concealment claim. A directed verdict may be granted pursuant to Fed.R.Civ.P. 50(a) at any time after commencement of the action, if the evidence presented can allow only one rational conclusion. All reasonable inferences from the proof must be drawn in favor of the party opposing the motion. Hersch v. United States, 719 F.2d 873 (6th Cir.1983). In order to affirm the district court's directed verdict, we must find that there was no rational basis for a jury to find that the Ables engaged in fraudulent concealment by not reporting the liens uncovered by Aetna.
 
 
 9
 The district court took this issue from the jury because it concluded that Aetna had to demonstrate prejudice by reason of the undisclosed liens, a showing Judge Allen felt that Aetna had not made. Aetna claims it does not have to show that it was harmed in order to avoid liability under the policy; it need only show an intentional omission of a material fact by the insureds.
 
 
 10
 The most recent Kentucky statement on the subject is in Home Insurance Co. v. Hardin, 528 S.W.2d 723, 725 (Ky.App.1975), which states the general rule that an intentional misstatement or omission of a material fact will void an insurance policy. These elements are more fully explained in Great American Insurance Co. of New York v. Clayton, 57 S.W.2d 467 (Ky.App.1932): a "material" matter for insurance purposes is one which bears on the risk being assumed by the insurance company. Further, an insured must know or have reason to know that the information is important and relevant to the insurer. 57 S.W.2d at 469. The second element requires proof that material information was fraudulently concealed. This may be shown through proof that the insured knew of the information and intentionally withheld it. Id.
 
 
 11
 Aetna argues that materiality is an inherently triable issue of fact, and relies on Queen Insurance Co. v. Cummins, 267 S.W. 144 (Ky.App.1924). This case and others stress that materiality is a factual issue because it depends on whether an insurer would normally not issue the policy if it knew of the withheld information. See also Niagra Fire Ins. Co. v. Layne, 172 S.W. 1090 (Ky.App.1915), and Hartford Insurance Co. v. Hass, 9 S.W. 720 (Ky.App.1888). These latter cases hold that the materiality issue turns on whether the jury finds that the insurer might have considered the information in deciding whether or not to provide insurance.
 
 
 12
 The liens not disclosed to Aetna in this case were part of proof of claim statements made long after the policy was issued. There is no claim here that Ables made any false statements before the fire occurred, or that they were made when Aetna was considering selling the Ables' the policy at issue. Nondisclosure of the existing liens made after the fire would have no logical bearing on whether or not Aetna would have initially assumed this risk. See North River Insurance Company v. Good Morning Farms, Inc., 105 A.D.2d 1095, 482 N.Y.S.2d 163 (N.Y.App.Div.1984) (absent special language in the insurance contract, material misrepresentation clause can apply only to fraud in inducing the insurer to issue the policy). We do not believe that Aetna has shown the omissions to be material under Kentucky law. See Layne and Hass, supra. The district court's statement about no showing of harm to Aetna did not improperly impose an extra element to the defense by the insurance carrier.
 
 
 13
 We concede that the issue in this case is not without difficulty and that Kentucky law is not altogether clear. In such situations we give substantial deference to the opinion of an experienced Kentucky jurist hearing the case and his interpretation of unsettled Kentucky law. See Molton v. City of Cleveland, 839 F.2d 240 (6th Cir.1988); and Martin v. Joseph Harris Co. Inc., 767 F.2d 296, 299 (6th Cir.1985).
 
 
 14
 Aetna also contends that the court improperly awarded prejudgment interest pursuant to Ky.Rev.Stat. Sec. 304.14-400. That statute provides for interest of 8%, to run from thirty days after proof of loss was submitted.[1] Aetna claims it does not have to pay prejudgment interest because the insureds had not shown themselves to be "entitled" to insurance funds until the jury determined that they were.
 
 
 15
 There are apparently no cases construing this Kentucky statute. We note, in this connection, that there is an analogous statute also found in Kentucky's insurance code. Ky.Rev.Stat. Sec. 304.39-210 governs late payments for automobile insurance claims.[2] That statute also calls for 12% added interest if claims are not paid within thirty days but, unlike Sec. 304.14-400, it requires payment at 18% interest if the delay was without good cause. The existence of this penalty provision suggests that the 12% interest applies regardless of the reason for delay, and whether or not there is a question whether the insured is entitled to the proceeds is immaterial. This was the result reached in Automobile Club Ins. Co. v. Lainhart, 609 S.W.2d 692 (Ky.App.1980), where the 12% interest provision was found to apply even though the insurer had a justified legal challenge to the insured's claim. Id. at 694-95. The fact that this statute is part of the same insurance code as Sec. 304.14-400 leads us to agree with the district court that the interest provision applies without regard to the ultimate question of justification for not making payment. Like the automobile insurance statute, Sec. 304.14-400 seems to be aimed at compensating the insured for delays in payment, no matter what the reason. We find no error in the allowance of the interest.
 
 
 16
 Aetna also makes a number of challenges to the district court's evidentiary rulings and jury instructions, maintaining that it was denied a fair trial on the arson issue. We have examined the record and find no basis for reversible error.
 
 
 17
 Accordingly, we AFFIRM the district court's decision in all respects.
 
 
 
 *
 THE HONORABLE JULIAN A. COOK, JR., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 304.14-400. Interest on payment from insuring company.--Any resident of this state who is the person named as the insured in any policy of fire insurance issued or delivered in this state on property located in this state and who sustained a loss of or to such property, which loss is covered under such policy, for which he becomes entitled to receive payment in cash from the insuring company shall also be entitled to receive payment of interest at the rate of eight percent (8%) per annum from such insurance company on any portion of such payment entitlement which is not paid nor tendered to such resident within thirty (30) days after receipt by the insuring company of a proof of loss executed and sworn by such resident, to the best of his knowledge and belief claiming any such amount to be due
 
 
 [2]
 304.39-210. Obligor's duty to respond to claims.--(1) Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation. If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant
 (2) Overdue payments bear interest at the rate of twelve percent (12%) per annum, except that if delay was without reasonable foundation the rate of interest shall be eighteen percent (18%) per annum.